# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JAMES GUSTIN; ASHLEY I. GUSTIN,** ) | |
| ) | |
| **PLAINTIFFS,** ) | |
| ) | **CIVIL ACTION NUMBER:** |
| **V.** ) | |
| ) | |
| **ALLIED INTERSTATE, INC.,** ) | |
| ) | |
| **DEFENDANT.** ) | |
| ) | |

## COMPLAINT
_____

This is an action brought by the Plaintiffs, James Gustin and Ashley I. Gustin, for actual and statutory damages, attorney's fees, and costs for Defendant's violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The Plaintiffs also seeks compensatory and punitive damages for the Defendant's violations of Alabama's common laws set forth herein.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 15 U.S.C. § 1692k(d). Venue is proper in that the Defendant transacted business in this district, and the Plaintiffs reside in this district.

## PARTIES

2. The Plaintiffs are residents and citizens of the state of Alabama, Jefferson County, and are over the age of twenty-one (21) years.

3. The Defendant, Allied Interstate, Inc. ("Allied Interstate"), is incorporated in Minnesota and was, in all respects and at all times relevant herein, doing business in the state of Alabama, and is registered to do business in Alabama with the Alabama Secretary of State. Plaintiffs assert that Defendant is regularly engaged in the business of collecting consumer debts from consumers residing in Jefferson County, Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

4. All events herein occurred in Jefferson County, Alabama.

5. All events and allegations herein revolve around Defendant's collection of delinquent student loans ("Student Loans") allegedly due from Plaintiff Ashley I. Gustin to the United States Department of Education originating in or around 2001.

### *Initial Contacts from a Non-Party*

6. Plaintiffs first learned of the alleged responsibility on the Student Loans when they began to receive collection letters and calls from an entity named Financial Asset Management Systems "FAMS" in April 2010.

7.     To the best of Plaintiff Ashley I. Gustin's recollection, she did not recall applying for such a Student Loan, but only that her father had her "sign a bunch of papers" when she enrolled in school. If there was any Student Loan liability, she understood that her father was the one who was liable.

8.     Surprised by the fact that she had been out of school many years and never had any contact regarding the Student Loans, Plaintiff Ashley I. Gustin requested information from FAMS regarding the Student Loans.

9.     FAMS was did not provide information to Plaintiff Ashley I. Gustin regarding the alleged liability on the Student Loans at this time – including why there had been no contact concerning the Student Loans in many years.

10.    FAMS did not have and/or did not provide much, if any, additional detail other than Plaintiff Ashley I. Gustin was liable on the Student Loans and would have to start paying $3,000.00 a month to pay the loans off.

11.    Plaintiff Ashley I. Gustin explained to FAMS that she and her husband could not afford $3,000.00 per month.

12.    At this time, Plaintiff Ashley I. Gustin reached out to her father who also failed to provide any additional information regarding the Student Loans.

13.    Plaintiffs then contacted attorney Dennis Goldasich to represent them in regards to Plaintiff Ashley I. Gustin alleged liability on the Student Loans.

3

14. Mr. Goldasich informed FAMS of his representation of the Plaintiffs and asked for verification of the Student Loans from FAMS and the U.S. Department of Education.

15. FAMS acknowledged the representation, and sent Mr. Goldasich an application for student loans allegedly signed by Plaintiff Ashley I. Gustin. No other evidence of Plaintiff Ashley I. Gustin's alleged responsibility on the Student Loans in question was ever sent.

16. Shortly thereafter, the Plaintiffs and Mr. Goldasich stopped receiving communications from FAMS, and assumedly, the file was transferred to the Defendant to continue collection activities.

### *Illegal Contacts by Defendant to a Consumer Known to be Represented by an Attorney*

17. The Defendant began to contact Plaintiffs in the Fall of 2010 via collection calls even though it was aware of Mr. Goldasich's representation.

18. The Defendant would often call Plaintiffs multiple times per day, as recently as February, 2011. Often the calls would come "back to back" and as late as 9:30 PM.

19. One particular agent/employee of the Defendant who identified himself as "Frank" was very abrasive and rude to Plaintiff Ashley I. Gustin and totally disregarded her requests for information regarding the alleged debt. His

4

behavior resulted in the Plaintiff Ashley I. Gustin hanging up the phone "in tears" on many occasions.

20. The Plaintiffs informed the Defendant on many occasions that they were represented by an attorney, and gave the Defendant his contact information.

21. At one point, the Defendant even acknowledged this fact by stating "oh yes, I see that here in your file."

22. Nevertheless, the Defendant continued to contact the Plaintiffs directly.

23. Plaintiffs informed the Defendant to 1) contact the attorney and not them; 2) that the Plaintiff Ashley I. Gustin was pregnant; 3) that she disputed the debt; and 4) that the incessant calls were causing significant negative effects on Plaintiff Ashley I. Gustin and her pregnancy.

24. Defendant repeatedly threatened to garnish/intercept the wages and tax refunds of not only Ashley I. Gustin, but also threatened to garnish/intercept the wages and tax refunds of a non-debtor, Plaintiff James Gustin, who is in no way liable for the alleged debt.

25. Furthermore, the Plaintiffs experienced more stress and frustration based on the total lack of documentation asserting the alleged liability regarding the debt, despite repeated requests for such information by Plaintiffs.

### *Illegal Third-Party Contacts*

26.   Defendant also contacted a third-party, Plaintiff Ashley I. Gustin's Aunt, Susan LeFoy, and disclosed information about the alleged debt to her, and attempted to get Ms. LeFoy to coerce Plaintiff Ashley I. Gustin into paying Defendant.

### *Misrepresentations by Defendant*

27.   In February 2011, Defendant sent the Plaintiff Ashley I. Gustin a letter demanding that she immediately begin to pay $616.00 per month or she would be subjected to garnishment and/or interception of Plaintiff's tax return.

28.   Feeling overwhelmed, coerced, and threatened, Plaintiff Ashley I. Gustin reluctantly agreed to pay the $616.00 to Defendant in order to stop the calls.

29.   Less than a month later, in March 2011, The U.S. Department of Education sent Plaintiff Ashley I. Gustin a letter stating Plaintiff's monthly payment would be (only) $240.00 per month.

30.   This payment arrangement from the original creditor shows that the Defendants assertion and threats were misleading, and were merely an attempt to exploit as much money as possible from the Plaintiffs.

## COUNT ONE
## FAIR DEBT COLLECTION PRACTICES ACT

6

31. The Plaintiffs adopt the averments and allegations hereinbefore as if fully set forth herein.

32. The Defendant has engaged in collection in numerous activities and practices in violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq*.

33. As a result of the Defendant's actions, the Plaintiffs are entitled to an award of statutory damages, costs, attorney fees, actual damages, and punitive damages.

## COUNT TWO
## NEGLIGENCE

34. Plaintiffs adopt the averments and allegations hereinbefore as if fully set forth herein.

35. Defendant knew or should have known the conduct set forth herein which was directed at and visited upon Plaintiffs.

36. Defendant knew or should have known that said conduct was improper.

37. Defendant negligently failed to prevent and/or participated in improper collection activities.

38. As a result of the Defendant's negligence, the Plaintiffs suffered worry, anxiety, nervousness, and mental anguish.

## COUNT THREE
## RECKLESSNESS AND WANTONNESS

39. The Plaintiffs adopts the averments and allegations hereinbefore as if fully set forth herein.

40. Defendant knew or should have known the conduct set forth herein which was directed at and visited upon the Plaintiffs.

41. Defendant knew or should have known that said conduct was improper.

42. Defendant recklessly and wantonly failed to prevent and/or participated in improper collection activities.

43. As a result of the Defendant's reckless and wanton conduct, Plaintiffs suffered worry, anxiety, nervousness, and mental anguish.

## COUNT FOUR
## NEGLIGENT TRAINING AND SUPERVISION

44. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

45. The Defendant knew or should have known the status of the alleged debt and of the conduct set forth herein which was directed at and visited upon the Plaintiffs.

46. The Defendant knew or should have known that said conduct was improper.

47. The Defendant negligently failed to train and supervise collectors in order to prevent said improper conduct.

48. The Defendant negligently failed to train and supervise collectors on the FDCPA as it relates to communications with consumers.

49. As a result of the Defendant's negligence, the Plaintiffs suffered worry, anxiety, nervousness, and mental anguish.

## COUNT FIVE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

50. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

51. The Defendant knew or should have known the status of the alleged debt and of the conduct set forth herein which was directed at and visited upon the Plaintiffs.

52. The Defendant knew or should have known that said conduct was improper.

53. The Defendant recklessly and wantonly failed to train and supervise collectors in order to prevent said improper conduct.

54. The Defendant recklessly and wantonly failed to train and supervise collectors on the FDCPA as it relates to communications with consumers.

55. As a result of the Defendant's recklessly and wanton conduct, the Plaintiffs suffered worry, anxiety, nervousness, and mental anguish.

## COUNT SIX
## INVASION OF PRIVACY

56. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

57. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the FDCPA, when it stated as part of its findings:

> Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, **and to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

58. The Defendant undertook and/or directed communications to the Plaintiffs constituting an invasion of privacy, as set out and described in the common law of the State of Alabama. Said communications were made in disregard for Plaintiffs' right to privacy. Said communications were made to force, coerce, harass, embarrass and/or humiliate the Plaintiffs into paying a debt.

59. Said invasions were intentional, willful, and malicious, and violated Plaintiffs' privacy. Plaintiffs avers that the communications were made by individuals who were the employees of and/or acting on behalf of Defendant.

60. Said communications constitute the wrongful intrusion into their solitude and seclusion.

61. As a proximate consequence of said invasion of the right of privacy, the Defendant has caused the Plaintiffs to suffer embarrassment, worry, humiliation, anxiety, nervousness, and mental anguish.

## COUNT SEVEN
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

63. The Plaintiffs allege that the Defendant's actions alleged were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon the Plaintiffs and/or were done in reckless disregard of the probability of causing the Plaintiff emotional distress, and these acts did in fact result in severe and extreme emotional distress.

64. As a result of the Defendant's conduct, the Plaintiffs suffered worry, anxiety, nervousness, and mental anguish.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a judgment against the Defendant as follows:

A. Declaratory judgment that the Defendant's conduct violated the FDCPA and state law;

B.	Statutory damages of $1,000 from the Defendants for the violations of the FDCPA (15 U.S.C.§1692k);

C.	Actual and punitive damages for the Defendant's violations of the FDCPA;

D.	Costs and reasonable attorney's fees from the Defendant pursuant to 15 U.S.C.§1692k;

E.	Compensatory and punitive damages against Defendant on Plaintiffs' state law claims; and

F.	Such other and further relief that this Court deems necessary, just and proper.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

/s/ Michael W. Lindsey
Michael W. Lindsey (ASB-4328-A63L)
John C. Hubbard (ASB-8252-H46H)
Dennis Goldasich
Attorney for Plaintiff

**OF COUNSEL:**
**JAUREGUI & LINDSEY, LLC**
2110 Devereux Circle, Ste 100
Birmingham, AL 35243
Phone: (205) 970-2233