FILED
2013 Mar-25  PM 08:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES GUSTIN;** | ) | |
| **ASHELY I. GUSTIN,** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **v.** | ) | **2:11-CV-03795-JEO** |
| | ) | |
| **ALLIED INTERSTATE LLC,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**COME NOW**, the Plaintiffs Ashley Gustin and James Gustin, (hereinafter "Plaintiffs" or "Ms. Gustin" and "Mr. Gustin") and respond in opposition to the Motion for Summary Judgment filed by Defendant, Allied Interstate LLC, (hereinafter "Defendant" or "Allied").  The Plaintiffs submit that neither the facts nor the law entitle the Defendant to summary judgment in this case as there exist genuine issues of material fact to be decided by a jury.

## TABLE OF CONTENTS

INTRODUCTION.................................................................3

RESPONSE TO DEFENDANT'S UNDISPUTED FACTS......................4

PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS..........................6

STANDARD OF REVIEW......................................................13

ARGUMENT......................................................................13

I.  FDCPA.....................................................................13

II.  WANTONNESS..........................................................20

III.  NEGLIGENT/ WANTON TRAINING/SUPERVISION.................24

IV.  JAMES GUSTIN'S STANDING.......................................26

CONCLUSION..................................................................26

CERTIFICATE OF SERVICE................................................27

## INTRODUCTION

As a preliminary matter, Plaintiffs dismiss and/or concede to the dismissal of their claims for Negligence, Invasion of Privacy, and Outrage. Plaintiffs also dismiss their claims pursuant to the Fair Debt Collection Practices Act ("FDCPA") for misrepresentation.  Plaintiff Mr. Gustin dismisses and/or concedes to the dismissal of his FDCPA claims pursuant to 15 USC § 1692b.  The remaining counts made the subject of Defendant's motion for summary judgment are Plaintiffs' claims pursuant to the FDCPA for contacting them directly after knowing of their attorney representation, wantonness, and negligent/wanton training and supervision.  Plaintiff Ms. Gustin also has a remaining FDCPA claim for Allied contacting a third party after knowledge of her attorney representation.

Plaintiffs are not disputing Ms. Gustin's liability on the student loan for the purposes of this litigation.  Her potential liability is not material to the Plaintiffs' remaining claims and will not be addressed in detail. However, this should be not construed as an admission of liability should the Department of Education ("DOE") bring affirmative claims against Ms. Gustin at some future time.

Plaintiffs remaining claims revolve around the Defendant's violation of the FDCPA by its numerous illegal contacts with the Plaintiffs and a third

party after it learned the Plaintiffs were represented by an attorney. Plaintiffs claim these contacts were done intentionally and with a total disregard for the Plaintiffs' rights. Allied and its collectors worked on a commission basis and had an incentive to collect as much money from the Plaintiffs as quickly as possible due to time limitations. Finally, Allied trained its collectors to ignore the attorney representation information it had readily available and ratified its collectors illegal collection efforts by not disciplining them after knowledge of the contacts.

## STATEMENT OF FACTS

### RESPONSE TO DEFENDANT'S UNDISPUTED FACTS

1. 7.  The evidence shows Plaintiff Ms. Gustin executed the promissory note.  The document can speak for itself.  Plaintiff disputes that the signature "irrefutably establishes Ms. Gustin's liability on the loan" because it is a legal conclusion.

2. 8-9.  It is contradictory mischaracterization to state Ms. Gustin "did nothing in response to the loan statement" and then in the next paragraph address her attorney's response to the loan statement.  As paragraph 9 states, Plaintiffs, through counsel, asked for "any and all documents in [FAMS] possession."

3. 16.  This paragraph appears to impeach Ms. Gustin regarding the

4

receipt of this initial notice.  However, receipt of this initial notice would imply Allied had her correct home address when it received this account from the DOE.  Therefore, Allied opens itself up to further liability under the FDCPA by contacting third parties for location information after already having the correct information.  *See generally* 15 USC § 1692b.

4. 20.    Plaintiffs dispute the characterization that the Allied representative that transcribed the notes from the DOE system to the Allied system was "inarticulate with his or her description of the what Allied actually knew of [the attorney representation]."  The word "inarticulate" is not found in the record.  Furthermore, what the Allied representative transcribed was a completely accurate description of the relationship between the Plaintiffs and Mr. Goldasich.   Allied Account Notes, attached to Defendant's motion as Exhibit K.

5. 27.   It is not entirely clear how many calls took place between Allied and the Gustins.  Mr. Gustin stated it could have been more than four.  Mr. Gustin Dep. p. 14, attached to Defendant's motion as Exhibit Q.  Ms. Gustin stated only that it was "possible" that there were only four live calls between the parties.  Ms. Gustin Dep. p. 155, attached to Defendant's motion as Exhibit B.  As to the second part of the

paragraph, when questioned whether it was correct that Ms. Gustin told the Allied collector that she would have her attorney call Allied, she responded that the collector's note sounded "one-sided and inaccurate" and that she believed she would have said, "I have an attorney, you can contact him." *Id*. p. 128.

6. 29-31.   These paragraphs imply Allied intentionally waited for a response from Mr. Goldasich before calling the Plaintiffs.   There is no evidence in the record, including Allied's own call log, to support that assertion.

7. 32.   In paragraph 27, Allied attempts to assert it is undisputed that there were only four conversations between the parties.   However, in this paragraph, Allied contradicts paragraph 27 by stating Ms. Gustin alleges there were more conversations.

### PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS

### Allied Background

8. Allied is one of twenty-two agencies that collect student loan debts for the DOE.   Ms. Hornbuckle Dep. p. 40, attached to Defendant's motion as Exhibit C.

9. The DOE would usually transfer the accounts every quarter if progress on the account had not been made.   *Id*. p. 41.

10. Collector Yvetta Schwartz (hereinafter "Ms. Schwartz") testified that, within Allied, collectors would lose an account after around two weeks if progress on an account had not been made.  Ms. Schwartz Dep. pp. 19-20, attached to Defendant's motion as Exhibit L.

11. Allied is paid by the DOE based on a "fee basis."  If it sets the consumer up on a payment plan, it receives a certain percentage of the payment agreement.  The percentage for a voluntary agreement is roughly 18%.  The percentage of a "rehabilitation plan" is lower, around 13%.  Ms. Hornbuckle Dep. p. 110.

12. Setting consumers up on a rehabilitation plan is a secondary choice. One of the benefits to the consumer is that collection fees are removed.  *Id*. p. 113.

13. Collectors must meet a collection goal in order to qualify for a monetary bonus.  *Id*. pp. 210-211; Ms. Schwartz Dep. p. 17; Mr. Collins Dep. p. 50, attached to Defendant's motion as Exhibit O.

14. Ms. Schwartz had been told by Allied that she had failed to meet her collection goals.  Ms. Schwartz Dep. p. 60.

**FTC Compliance**

15. In Fall 2010, Allied entered into a consent degree to settle charges brought by the Federal Trade Commission ("FTC") for violations of

the FDCPA.  FTC Consent Decree, attached hereto as Exhibit A.

16.   In addition to paying a civil penalty of $1.75 million, Allied agreed to provide a copy of the Consent Decree to its current and future employees. *Id*. pp. 15-16.

17. Collector Franklin Collins (hereinafter "Mr. Collins"), who was employed at the time the Consent Decree was filed, did not recall ever seeing the document.  Mr. Collins Dep. pp. 46-48.

18. When questioned if Allied implemented any new training after the Consent Decree, Ms. Hornbuckle stated, "I am not aware of that, no, sir."  Ms. Hornbuckle Dep. p. 36.

**Call to Third Party After Knowledge of Representation**

19.  Ms. Schwartz stated as part of her daily routine, she would check the Allied system, and also the DOE system "at times."  Ms. Schwartz. p. 9.

20. Allied's training material states that Allied collectors should check the DOE system when certain situations arise – like when a consumer claims a disability.  Ms. Hornbuckle Dep.  p. 213-214

21.  Ms. Schwartz stated that she had access to Google when she made her collection efforts on Ms. Gustin's account.  Ms. Schwartz Dep. p. 24.

22.  Although Ms. Schwartz also testified that she would not be able to search the internet for the attorney's contact information because she would need to contact the borrower first. *Id*. p. 42.

23.  Ms. Schwartz stated if a consumer's file only listed an attorney's name, without contact information, she would still need to contact the borrower to "see what they want to do" because she would not know if the consumer was still represented. *Id*. pp. 28-29.

24.  If an attorney got involved in one of Ms. Schwartz's accounts, she would contact her supervisor and the file would be "bumped" up to an AVP. *Id*. pp. 30-31.

25.  Ms. Schwartz understood Allied policy to mean that she did not have to review the collector notes, including the notation regarding Ms. Gustin's representation, before making collection efforts. *Id*. p. 43.

26.  Ms. Schwartz went on to state that if she would have checked the collector notes and saw the entry notating Plaintiffs representation, she would have discussed it with her AVP. *Id*. p. 41.  Although, she also would have went ahead and called the third party to obtain contact information for Ms. Gustin. *Id*. pp. 41-42.

**Allied's Attorney Representation Policy**

27.  Ms. Hornbuckle stated that Allied's training manual for DOE files

included:

> "If the debtor is represented by an attorney with respect to the debt, DO NOT contact the debtor, you must have Attorney's name and address, and wait for at least 30 days, before re-contacting the debtor or unless the attorney tells you to call the debtor directly."

Ms. Hornbuckle Dep. pp. 68-69.

28.  Ms. Hornbuckle, in general, stated that this policy was not triggered and thus not violated in the present case.  *See generally Id*. p. 64-65.

29.  Ms. Hornbuckle testified that Allied can not deem information in the DOE system reliable because she "didn't know what they were thinking when they documented it that way."  *Id*. p. 132.  She went on to state one reason why Allied could not rely on the DOE information is because  "it could have had an expiration date on it" or been another debt.  *Id*. p. 135.

30.  Ms. Hornbuckle stated that Allied had a right to validate and verify information, such as attorney representation information, provided by a creditor.  *Id*. p. 149-150.

31.  Mr. Collins stated he could continue calling after the Mr. Goldasich's notation in the Allied file because it was "just an opinion" from the Allied representative that notated it.  Mr. Collins Dep. p. 98.

32.  Ms. Hornbuckle stated that collectors cannot even rely on the notes

from Allied collectors because Allied does not have a standard notation system.  Ms. Hornbuckle. Dep. pp. 123-124.

33.  AVP/Trainer Kelly Snyder (hereinafter "Ms. Snyder") stated that the notation of Mr. Goldasich's representation in Allied's system should not have triggered Allied's policy to not call the borrower.  Ms. Snyder Dep. p. 36, Attached hereto as Exhibit B[1].  Ms. Snyder went on to say that Allied collectors, even if the consumer mentions having an attorney, have no duty to ask the consumer about the attorney representation.  *See Id*. p. 58.

34. Even after reviewing the entire file in hindsight, Ms. Snyder said it would not lead her to probe the Plaintiffs for attorney representation information.  *Id*. p. 68.

### Direct Communication of Attorney Information

35.  Ms. Gustin stated she received no calls from FAMS and that all calls were with Allied.  Ms. Gustin Dep. p. 101.

36.  Mr. Gustin specifically referenced informing an Allied collector of the Plaintiffs representation:

> Mr. Gustin: Well, when I spoke to him on one occasion, I specifically said why don't you talk to my attorney, and

---

[1] Plaintiffs only attach the referenced pages instead of the entire transcript due to concerns over revealing protected information covered by this Court's Protective Order.

he said Dennis' name, and I remember it, and I remember where I was standing in my house because he butchered his last name when he said it. And I said yes, I said it's Goldasich. He said, okay, and I was, like, take it up with him.

*Id*. p. 25-26.

37.  Ms. Gustin stated she vividly remembered three conversations with Allied.  Ms. Gustin Dep. p. 104.

38.  Ms. Gustin also stated:

"I would have felt threatened by him because I felt like he was coming through the phone, you know, and I would tell him that I was unaware, that I didn't know what I could do, that we had done what we thought we were suppose to do by talking to an attorney, that he needed to talk to him, that he had his name, he repeated his name, he knew that Mr. Goldasich was representing me."

Ms. Gustin Dep. p. 118.

39.  Mr. Gustin testified that at no time during his calls with Allied did any Allied collector ask for Mr. Goldasich's contact information.  Mr. Gustin Dep. p. 27.

40.  Ms. Gustin felt like the Allied collectors were screaming at her.  Ms. Gustin Dep. p. 112.  She said Allied collectors would make threats to garnish her wages or "take [her] taxes."  *Id*. p. 113.  Ms. Gustin informed the Allied collectors that she was pregnant.  *Id*. p. 113.  Ms. Gustin went on to state that an Allied collector told her "you should

have thought about this before you got a damn loan." *Id*. p. 114.

41.  Ms. Gustin was pregnant during her contact with Allied and testified
    that the Allied collection efforts had a negative impact on her
    pregnancy. *See Id*. p. 163.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## ARGUMENT

I.  **Allied is not entitled to summary judgment on Plaintiffs' FDCPA claims because questions of fact exist regarding Allied's knowledge of the Plaintffs' representation.**

The Eleventh Circuit evaluates FDCPA claims under the "least sophisticated consumer" standard. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the same standard for the FDCPA as that of the Federal Trade Commission Act, which was meant to protect the public, including the "ignorant, the unthinking, and the credulous").  The

FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010).

15 U.S.C. § 1692c(a)(2) states that that a debt collector may not communicate with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer…"

The FTC has commented "[i]f a debt collector learns that a consumer is represented by an attorney in connection with the debt, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the consumer." Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50110 (Fed. Trade Comm'n Dec. 13, 1988).

It is undisputed that Mr. Goldasich represented the Plaintiffs at the time of the Allied collection efforts in connection to the student loan. It is also undisputed that Allied had access to the DOE system and could see the

notations in that system referencing Mr. Goldasich's representation. Ms. Hornbuckle Dep. p. 133. Finally, it is undisputed that an Allied representative saw this information on the DOE system and transcribed in into Allied's own system before Allied began collection efforts against the Plaintiffs. Allied Account Notes; Ms. Hornbuckle Dep., pp. 118-19. Plaintiffs argue these facts alone constitute that Allied had knowledge of the attorney representation.

Allied cites several cases that purportedly support its position that it did not violate the FDCPA by contacting the Plaintiffs after it learned of their representation. Each one of these cases deals with situations where the respective plaintiff argues knowledge of the creditor is automatically imputed over to the debt collector. The plaintiffs in these cases do not claim the debt collectors had any amount actual knowledge – they depend exclusively on imputed or constructive knowledge. However, the Gustins are not arguing constructive knowledge or imputed knowledge under some principal-agency theory. Plaintiffs allege that Allied had actual knowledge. It is undisputed that Allied had access to the DOE notations, checked those notations, and physically transcribed the information into its own system. It is also undisputed that Ms. Gustin at least mentioned "her attorney" on a call with an Allied collector. *See* Allied Account Notes. Also, Ms. Gustin and

Mr. Gustin both testify to specifically informing Allied collectors of their attorney representation.  Mr. Gustin Dep. p. 25-26; Ms. Gustin Dep.  118.

Allied cites *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77 (N.D.N.Y 2001) to support its position that actual knowledge is required on behalf of the debt collectors.  In *Micare*, the Court specifically warns of the dangers of the business practices that occurred in this case.  "[A] debt collector wishing to defeat the purposes of the act could establish a practice of not seeking out information regarding the debtor's representation by counsel. Whenever a creditor discovered that a debtor was represented by counsel, it could transfer the file to a debt collector with such a practice and allow them to contact the debtors directly without fear of liability under the FDCPA."  *Id*. Allied has developed a practice, according to an unwritten policy, to self-determine creditor provided information to be unreliable so that it can continue collection efforts directly from consumers.  *See* Ms. Hornbuckle Dep., pp. 123, 129, 132, 135, 139.

Allied relies heavily on the assumption that the Plaintiffs, although may have stated they were represented and given the name of their attorney, never gave Allied Mr. Goldasich's contact information.  In other words, Allied may have known of the representation but since the Plaintiffs, themselves, didn't give its collectors Mr. Goldasich's contact information,

then their FDCPA claim must fail as a matter of law.

The plain wording of the statute makes it clear that if the debt collector does not have contact information, he/she has a duty to ascertain it. *See* 15 U.S.C. § 1692c(a)(2).  The easiest way to ascertain this information would have been to ask the Gustins for Mr. Goldasich's information when the collectors brought his name up.  However, Ms. Snyder testified that Allied had no duty to probe for this information.  *See* Ms. Snyder Dep. p. 58, 68.  A second way could have been to contact the DOE and ask for more information regarding the notations.  Thirdly, and the way Mr. Collins thinks he found the contact information was to simply "google" it.  Mr. Collins Dep. p. 75.  Mr. Collins did not testify that he had any trouble finding Mr. Goldasich's contact information when he finally decided to search for it.

Finally, Allied argues that since Mr. Goldasich never properly replied to the Mr. Collin's phone call.  After attempting contact with an attorney, a debt collector cannot go back to contacting the consumer directly "unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector."  15 U.S.C. § 1692c(a)(2).  There is no statutory duty for a consumer's attorney to contact a debt collector until he/she is first contacted.  The first contact happened on January 14, 2011, which is several months after Allied began contacting the Plaintiffs.  *See*

Allied Account Notes. A single violation of an FDCPA provision is sufficient to establish civil liability. *Owen v. I. C. Sys., Inc.*, 629 F.3d 1263, 1275 (11th Cir. 2011). The fact that Allied finally decided to contact Mr. Goldsich months after contacting the Plantiffs does not erase all the illegal contacts before that time. In fact, it is evidence that his contact information was easily ascertainable. Furthermore, two hours after contacting Mr. Goldasich's office, Allied resumed its collection efforts against the Plaintiffs. *See* Allied Account Notes. The next conversation that Allied shows it had with the Gustins was not the verify Mr. Goldasich's representation, but to set Ms. Gustin up on the payment plan. *Id*.

Allied's call to Ms. LeFoy violates 15 USC § 1692b. This section prohibits contacting third parties for locating information after learning of attorney representation. The language in this section is essentially the same as 15 U.S.C. § 1692c(a)(2). 15 USC § 1692b(6) states, "after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector."

Allied contacted Ms. LeFoy before talking with the Plaintiffs but after

it had the information from the DOE transcribed into its own system.  *See*

Allied Account Notes.  For the same reasons discussed above, this contact

violated the FDCPA.

Finally, it is important to examine the policy implications of ratifying

Allied's conduct.  Allied states that it cannot depend on information that the

creditor provides because it may be unreliable.  *See* Ms. Hornbuckle Dep.

pp. 132-135.  It self-determines this based on an unwritten policy.  Allied

collectors cannot even rely on the notes from Allied collectors because

Allied does not have a standard notation systems and therefore the notes

may be unreliable.  *Id*. pp. 123-124.  Allied wants a system where every

contact with the consumer has no bearing on any other call.  If the consumer

states he/she has an attorney in one call and that information is documented,

the Allied collector has no duty to follow-up in a subsequent call for contact

information.  The collector can continue collecting as if the information was

totally omitted.  As the Court in *Micare* warned, if Allied or another debt

collector does determine an attorney is involved (as FAMS did), the DOE

can just transfer the account to another one of the twenty-two companies.

The next company can self-determine the previous information from the

DOE to be unreliable and proceed as if that information does not exist.  The

cycle could continue indefinitely.  This type of policy totally eradicates the

purpose and intent of the FDCPA.

For the foregoing reasons, there are material facts the exist regarding whether Allied knew of the Plaintiffs' representation.   A reasonable jury could find that Allied did in fact know of the representation and chose to ignore it.  For the foregoing reasons, Allied's motion for summary judgment on Plaintiffs' FDCPA claim should be denied.

II. **There is ample evidence that a jury could find Allied's contact to be wanton.**

"Wantonness involves the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1056 (Ala. 2003);  *see also Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) ("'Wantonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.'  Alabama Code § 6-11-20(b)(3).  'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994).").

To maintain an action for wantonness, Plaintiffs must demonstrate that Allied "participated in conduct characterized by 'a reckless or conscious disregard of the rights or safety of others.'" *Gibson v. Norfolk Southern Corp.*, 878 F. Supp. 1455, 1463 (N.D. Ala. 1994) (quoting Code of Alabama 1975 § 6-11-20(b)(3)). Plaintiff need not establish that Allied intended to cause their injuries in order to prevail on their wantonness claim. *Id*.

Plaintiffs may avoid summary judgment on the claim by providing evidence of "an inadvertent act or failure to act, when the one acting or failing to act has knowledge that another is probably imperiled by the act or failure to act and the act or failure to act is in reckless disregard of the consequences." *Hamme v. CSX Transportation, Inc.*, 621 So. 2d 281, 283 (Ala. 1993) (internal citations omitted).

Plaintiffs bring their wantonness claim on the basis that Allied intentionally and knowingly violated their FDCPA rights by contacting them and a third party after having learned of their attorney representation. As discussed above, it is clear and undisputed the DOE had provided information regarding the representation to the Plaintiffs. However, despite this knowledge, Allied continued their collection efforts as if the information did not exist.

The Northern District of Alabama has decided that a debt collector,

like Allied, can be liable for the wantonness action of their employees under the theory of *respondeat superior*.  *Lindsey v. NCO Fin. Sys., Inc.*, 2012 U.S. Dist. LEXIS 129866 (N.D. Ala. Sept. 12, 2012).  The individual collector's actions in *Lindsey* are highly analogous to the conduct of Ms. Schwartz in the present case.  The Court found that since the collector had been warned about not meeting her collection goals and that the company had a commission program that rewarded her based on the amount of money she brought in, it was reasonable that a jury could find that the collector cut corners and violated the FDCPA in order to meet her goals and obtain more money.  *Id*.  The Court went on to state that scant evidence is all that is needed for a claim of wantonness.  *Id*.  Ms. Schwartz testified that she had been told she was not meeting her collection goals.  Ms. Schwartz Dep. p. 60.  Ms. Schwartz testified that if she concluded an attorney was involved, then the file would be transferred to an AVP.  *Id*. p. 30-31.  Thus she may lose her opportunity to make a commission.  This gave her an incentive to ignore the attorney representation information contained in the system.

Allied's account transition practice also gave the other collectors a reason to ignore the attorney representation information.  As mentioned earlier, the timeframe to make progress on an account is short.  *See* Ms. Schwartz Dep. p. 19-20.  A reasonable jury could infer that since collectors

only had a couple of weeks to make progress on an account, they intentionally ignored any information that would slow or hinder their preferred collection tactics.  Triggering the attorney representation policy found in the training manual would have at least ceased collection efforts for 30 days.  *See* Ms. Hornbuckle Dep. p. 68-69.   It is also reasonable to infer that since the DOE transferred the account from FAMS once it determined an attorney was involved, it could do the same to Allied.  This would prevent Allied or its collectors from making a commission on the account.

Finally, Plaintiffs have provided evidence that they directly communicated their attorney representation to Allied during phone calls. Mr. Gustin Dep. p. 25-26; Ms. Gustin Dep. p. 118.  Since Allied collectors continued collection efforts after this direct knowledge, a reasonable jury can determine that Allied acted with a complete and reckless disregard for the Plaintiffs' rights.

Plaintiffs have provided evidence that Allied knowingly and intentionally violated the Plaintiffs' FDCPA rights by continuing its collection effects directly against the Plaintiffs after there was ample knowledge of their attorney representation.   Plaintiffs also provided evidence that Allied could monetarily benefit from their illegal collection efforts.   For those reasons, Allied's motion for summary judgment on

wantonness should be denied.

## III. **Plaintiffs have also provided ample evidence that Allied's training and supervision were negligent and/or wanton.**

To establish a claim for negligent, reckless or wanton supervision, a plaintiff must show that "(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately." *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009); *see also Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1070-71 (Ala. 2003) (demonstrating that for both negligent and reckless supervision, a plaintiff must properly allege tortious conduct). However, to sufficiently allege a claim of reckless or wanton training or supervision, as opposed to negligence, plaintiffs must demonstrate that the employer had actual knowledge of an employee's tortious conduct -- a higher bar than negligence's "knew or should have known" standard. *See Big B Inc. v. Cottingham*, 634 So. 2d 999, 1004 (Ala. 1993) (distinguishing reckless and wanton training and supervision from negligent training and supervision).

Allied argues that Plaintiffs claim for negligent and/or wanton training and supervision should be dismissed because the claim can not stand

independently without the Plaintiffs also proving an underlying common law tort.

As discussed above, Plaintiffs argue that a reasonable jury could find that Allied's conduct was wanton with its contacts with the Plaintiffs after it learned of the Plaintiffs' representation. If the wantonness claim is allowed to proceed, Plaintiffs have established a *prima facie* case for negligent and/or wanton training and supervision. The second prong requires the employer to have actual notice of the conduct or would have gained such notice if it exercised due and proper diligence. It is clear from the collection notes that Allied had notice of the collection efforts toward the Plaintiffs. A supervisor even participated in the last call with the Plaintiffs. Ms. Snyder Dep. p. 59. Thirdly, it is undisputed that Allied failed to discipline any employee once it found out about the conduct. *See* Ms. Snyder Dep. p. 52; Ms. Schwartz Dep. p. 60.

In addition, Allied's response to the FTC Consent Decree is further evidence of wanton training. Allied stated that even after knowledge of the FDCPA violations contained in the Consent Decree, it failed to implement any new training requirements. Ms. Hornbuckle Dep. p. 36.

For these reasons, Allied's motion for summary judgment for negligent and/or wanton training and supervision should be denied.

IV.  **James Gustin's remaining claims should proceed along with Ashley Gustin's claims.**

15 USC § 1692c(d) defines "consumer" to include the spouse for violations pursuant to § 1692c.  Mr. Gustin is the spouse of Ms. Gustin.  Mr. Gustin's remaining FDCPA claims are pursuant to § 1692c.  Therefore, he has the same standing to bring claims as Ms. Gustin.  Statutorily, there is no difference between Ms. Gustin and Mr. Gustin for the purposes of their § 1692c claims.  Mr. Gustin's remaining state law claims fall under Allied's violation of § 1692c.

## CONCLUSION

Defendant is not entitled to summary judgment on any of Plaintiffs' remaining claims.   Plaintiffs have produced substantial evidence that genuine issues of material fact exist with Plaintiffs' FDCPA claims and their state law claims such that they are due to go before a jury.   As such, Plaintiffs respectfully request that this Court enter an Order denying summary judgment to Defendant.

/s/ John C. Hubbard
John C. Hubbard
Attorney for Plaintiffs

**OF COUNSEL:**
John C. Hubbard, LLC
PO Box 961
Pelham, Alabama 35124
205-378-8121
jch@jchubbardlaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have, on this the 25th day of March, 2013, electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following:

Neal D. Moore, III, Esq.
L. Jackson Young, Jr., Esq.
Sarah E. Orr, Esq.
Ferguson, Frost & Dodson, LLP
2500 Acton Road, Suite 200
Birmingham, AL 35243