FILED

2013 Apr-04  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES GUSTIN and | ) | |
| ASHLEY I. GUSTIN, | ) | |
| | ) | |
| Plaintiffs, | ) | **OPPOSED** |
| | ) | |
| v. | ) | CIVIL ACTION NO: |
| | ) | 2-11-cv-3795-JEO |
| ALLIED INTERSTATE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT ALLIED INTERSTATE LLC'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Allied Interstate LLC ("Allied") and submits this reply to Plaintiffs' response [Doc. 20] in opposition to Allied's motion for summary judgment [Doc. 19]. In support hereof, Allied shows unto the Court as follows:

## PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS

9. During the last month of each quarter, the U.S. Department of Education ("DOE") recalls its accounts from Allied that have been with Allied for six months. Hornbuckle Dep., p. 41. Ms. Hornbuckle did not testify that DOE recalls accounts if progress on the account had not been made. *Id.*

12. Ms. Hornbuckle did not testify that setting consumers up on a rehabilitation plan is a secondary choice. Hornbuckle Dep., p. 113. Although DOE will remove from the consumer's balance any fees that remain at the time of rehabilitation, there is no

evidence that DOE compensates Allied or its collectors less when a consumer enters into a rehabilitation program.  *Id.*

14.     Although Ms. Schwartz testified Allied has informed her she was not meeting her goals, there is no evidence that Allied did so prior to or during the period in which Ms. Schwartz attempted collection efforts on the subject account.  Schwartz Dep., p. 60.

17.     Mr. Collins testified he did not recall receiving a copy of the consent decree, but he "could have."  Collins Dep., p. 47.

21.     Ms. Schwartz testified she is allowed to use Google or another search engine for skip tracing purposes only.  Schwartz Dep., p. 24.

22.     Ms. Schwartz testified she would not have "googled" Dennis Goldasich's name prior to contacting Ms. Gustin ". . . because [Ms. Schwartz] would want to make sure that [she] contacted the correct attorney, if the . . . consumer is still being represented by an attorney."  Schwartz Dep., pp. 42-43.

25.     Ms. Schwartz did not testify Allied's policy did not require her to review Allied's account notes before making collection efforts.  Ms. Schwartz testified that after reviewing the October 26, 2010 notation in Allied's account notes—"BRRW [borrower] IS WRKNG [working] W/ ATTY [attorney] . . . GOLDASICH JR"—she would still need to contact the consumer "[t]o verify . . . if they are still being represented by an attorney."  Schwartz Dep., pp. 43.  She further testified she "wouldn't really be able to

[look up the attorney's phone number] because all [she] would have to go by is just the last name." *Id.* pp. 43-44.

29.    Ms. Hornbuckle did not testify information in DOE's system is unreliable. Ms. Hornbuckle was referring to the October 26, 2010 notation, which an Allied collector wrote in Allied's account notes upon reviewing FAMS' notations in DOE's system, when she testified that Allied did not know Ms. Gustin was represented by counsel with respect to the subject debt.  Hornbuckle Dep., pp. 132, 133, 135.

30.    The thrust of Ms. Hornbuckle's testimony was that Allied had the right, not in general or in every circumstance but in this instance and based on limited information from DOE's system, to contact Ms. Gustin to determine whether she is represented by counsel with respect to the subject debt.  Hornbuckle Dep., pp. 149-50.

31.    Mr. Collins testified the October 26, 2010 notation in Allied's account notes was not made by an individual or authority who actually received a letter from or regarding Mr. Goldasich.  Collins Dep., p. 99.

32.    Ms. Hornbuckle did not testify Allied collectors cannot rely on the notes of other collectors because Allied does not have a standard notation system, or for any other reason.  Ms. Hornbuckle testified the October 26, 2010 notation in Allied's account notes is not accurate based on the information available to Allied at that time. Hornbuckle Dep., p. 123.

33.    Ms. Snyder did not testify that "Allied collectors, even if the consumer mentions having an attorney, have no duty to ask the consumer about the attorney

representation."  Ms. Snyder testified Allied does not assume a consumer is represented by counsel and relies on the consumer to provide that information.  Snyder Dep., p. 58.

34.     Ms. Snyder testified that until the consumer advises Allied that she is represented by counsel with respect to the subject debt, and until the consumer provides the attorney's name and address or telephone number, Allied would attempt to contact the consumer.  Snyder Dep., p. 68.

35.     Ms. Gustin testified she did speak with FAMS: "Yeah, I mean, I never knew the difference between who was calling me, so—. . .—to me Allied had been calling me before that because I never knew—I don't—I mean, I don't remember having—like, FAMS did not speak with me the way that Allied Interstate spoke with me. . . . The one conversation that I recall having with FAMS was not near as—of the harassing nature. . . . [W]ho was addressing me [between FAMS and Allied], I was unclear.").  Gustin Dep., p. 169-72.

36.     Like Ms. Gustin, *see* Ashley Gustin Dep., p. 119, Mr. Gustin testified he did not offer Mr. Goldasich's contact information to Allied but instead "assumed [the collector Franklin Collins] had it."  James Gustin Dep., pp. 27-28.

40.-41.     As Plaintiffs make no claim in this case for violation of the FDCPA based on alleged, harassing collection efforts, these paragraphs are not germane to Allied's motion.

## ARGUMENT AND CITATION TO AUTHORITY

**A.    Contacts With a Consumer Known to be Represented by an Attorney[1]**

Plaintiffs have failed to adduce substantial evidence[2] that Allied (1) knew Ms. Gustin was represented by an attorney with respect to the subject debt; *and* (2) had knowledge of, or could have readily ascertained, such attorney's name and address.  *See* 15 U.S.C. § 1692c(a)(2).  Plaintiffs must satisfy both elements, yet they have satisfied neither.

**1.    Allied Did Not Have Actual Knowledge That Ms. Gustin Was Represented by Counsel With Respect to the Subject Debt.**

Plaintiffs argue the following facts "alone" demonstrate that Allied had actual knowledge of the attorney representation:

> (1) Mr. Goldasich represented Ms. Gustin at the time of Allied's collection efforts;
> (2) Allied had access to DOE's system and could see FAMS' notations in that system to the effect that in the Summer of 2010, Mr. Goldasich represented Ms. Gustin with respect to *some* debt owed to DOE; and
> (3) an Allied representative reviewed FAMS' notations in DOE's system and made the October 26, 2010 entry in Allied's account notes before Allied commenced collection efforts.

Response, pp. 14-15.  Plaintiffs do not dispute their § 1692c(a)(2) claim requires them to prove Allied had *actual* knowledge that Ms. Gustin was represented by counsel with respect to the specific debt Allied was attempting to collect.  *See Eslava v. AllianceOne Receivables Mgmt., Inc.*, 2012 WL 4336012, *2 (S.D. Ala. 2012) (citation omitted).

---

[1] As Plaintiffs' entire Response appears to rise and fall on the success of their § 1692c(a)(2) claim, Allied focuses its argument herein on the reasons why that claim, like all of Plaintiffs' remaining claims, is due to be dismissed as a matter of law.

[2] *Buckentin v. SunTrust Mortg. Corp.*, 2013 WL 830887, *9 (N.D. Ala. 2013).

The undisputed evidence is that the day after DOE assigned the account to Allied, an Allied collector saw on DOE's system two references to "borrower's attorney Dennis Goldasich."[3]  Allied had no contact information for Mr. Goldasich then or at any time during its collection efforts.  Allied was not in possession of, nor did it have access to, the letters, or their contents, which Mr. Goldasich sent to FAMS or DOE two and four months, respectively, prior to Allied's receiving the account.[4]  Allied did not know whether, two months after the date of the last entry in DOE's system and Mr. Goldasich's last letter, he still represented Ms. Gustin; whether he ever represented her in connection with the subject debt; whether Ms. Gustin's authorization allowing FAMS and DOE, but not Allied, to communicate with Mr. Goldasich contained an expiration date or other qualifiers; or whether Ms. Gustin had since revoked her authorization to FAMS and DOE.

The inescapable conclusion is Allied did not have actual knowledge Ms. Gustin was represented by counsel with respect to the particular debt which the DOE referred to Allied.  As the law does not impute to Allied the knowledge of the creditor, DOE, or a

---

[3] Plaintiffs argue baldly and without any evidence whatsoever that "Allied has developed a practice, according to an unwritten policy, to self-determine creditor provided information to be unreliable so that it can continue collection efforts directly from consumers."  Response, p. 16.  In the portion of her deposition which Plaintiffs cite for this proposition, Ms. Hornbuckle was actually referring to the Allied collector's *interpretation*, on October 26, 2010, of the notes which FAMS had inputted in DOE's system.

[4] *See Vega v. United Recovery Sys., L.P.*, 2012 WL 458468, *3 (D.N.J.) (noting that the plaintiff had provided no facts suggesting that the collection agency had actual knowledge that the plaintiff was represented, the court reasoned that "[t]his deficiency is not cured by Plaintiff's suggestion that [the agency] had constructive knowledge on the basis of the previous representation letter sent to [the creditor]; knowledge on [the creditor's] part cannot, without more, be imputed to [the agency].") (citation omitted).

prior collection agency, FAMS, Allied did not violate § 1692c(a)(2) when it attempted collection efforts toward Ms. Gustin.  *See Eslava*, 2012 WL 4336012, *2.

Attorney representation is specific to the debt.  Under the FDCPA, a collector may not communicate with a consumer "if the debt collector knows the consumer is represented with respect *to such debt*. . ."  15 U.S.C. § 1692c(a)(2) (emphasis added).  Case law is clear on this point.  *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991); *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120 (W.D. Wis. 2004); *Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135 (D. Kan. 2004).  Moreover, the FTC's interpretation of § 1692c[5] supports the non-imputation of FAMS' or the DOE's knowledge to Allied.  *See* FTC Statements of General Policy or Interpretation[;] Staff Commentary on the FDCPA, 53 Fed. Reg. 50097, 50098, 50104 (1988) ("A debt collector who knows a consumer is represented by counsel with respect to *a* debt is not required to assume similar representation on *other* debts.") (emphasis added).  The FTC recognized that requiring a collector to know when an alleged debtor is represented by counsel with respect to other, future debts would place an "unreasonable burden" on the collector.  *See Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1464-65 (C.D. Cal. 1991) (citing 53 Fed. Reg. at 50098).

   2.   **Even Assuming Allied Had Actual Knowledge of the   Representation by January 12, 2011, When Franklin Collins Began His Collection Efforts, Allied Reasonably Attempted to Ascertain Mr. Goldasich's**

---

[5] Although the FDCPA expressly prohibits the FTC from issuing rules or regulations to supplement the statute, *Pressley v. Capital Credit & Collection Service*, 760 F. 2d 922, 925 n.2 (9th Cir. 1985), the FTC is the administrative agency charged with enforcing the statute, and its interpretation should be given "'some weight.'"  *Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652, 659 (D. Del. 1990) (citation omitted).

**Contact Information and Communicate Directly With Him, To No Avail.**

Once Allied began communicating with Ms. Gustin, it is undisputed neither she nor Mr. Gustin ever gave any of Mr. Goldasich's contact information—neither an address nor phone number—to Allied so it could begin communicating only with him. In fact, Ms. Gustin testified she does not remember, as Allied's account notes therefore conclusively establish, whether she told Allied during her first conversation with Allied, on November 8, 2010, that *she would have "her attorney" call Allied*. The undisputed evidence, however, is that Mr. Goldasich never telephoned or wrote to Allied at any time.

Despite Ms. Gustin's testimony that she "possibly" had only four conversations with Allied, set forth in [Doc. 19], ¶¶ 27-31, Ms. Gustin alleges she had additional conversations with Allied collector Franklin Collins.[6]  In one such conversation, Ms. Gustin alleges Mr. Collins knew Mr. Goldasich represented her in connection with the subject debt because he allegedly read Mr. Goldasich's name "off of his computer."  Mr. Gustin too recalls a conversation in which Mr. Collins said Mr. Goldasich's name, and Mr. Gustin told Mr. Collins to "take it up with him."[7]  James Gustin Dep., pp. 25-28. The undisputed fact is that in their alleged conversations with Mr. Collins, neither Ms. Gustin nor Mr. Gustin gave any of Mr. Goldasich's contact information to Mr. Collins

---

[6] Mr. Collins testified that because the account notes reflect only that he placed telephone calls to Ms. Gustin and left some voicemails for her, but with no conversation taking place, no conversation ever took place between them.  For purposes of Rule 56 summary judgment standards only, however, Allied will assume Plaintiffs discussed Mr. Goldasich's representation of Plaintiffs with Mr. Collins.

[7] The Gustins do not allege they mentioned or referenced Mr. Goldasich by name with any other Allied collector besides Mr. Collins.

but instead "assumed" Mr. Collins had it.  Ashley Gustin Dep., p. 119; James Gustin Dep., pp. 27-28.

It is further undisputed Mr. Collins, whose name appears in Allied's account notes as the initials "BDM," placed his first call to Ms. Gustin on January 12, 2011.[8]  Two days later, on January 14, 2011—whether based on his review of Allied's and DOE's account notes, as Mr. Collins testified, or whether based on the Gustins' and Mr. Collins' alleged conversations, as Plaintiffs assert—Mr. Collins "googled" Mr. Goldasich's name in an effort to ascertain his address and telephone number, a fact which belies Plaintiffs' unsupported argument that Allied purposefully avoided obtaining Mr. Goldasich's contact information by not asking Plaintiffs for it.  Mr. Collins testified he "placed a call to what was believed to be the possible borrower's attorney, so possibly Mrs. Gustin's attorney, and then it looks like I spoke with a paralegal there, who took my information and advised she would pass the message along" to Mr. Goldasich because he was not in the office.  Collins Dep., p. 29.

It is undisputed that neither Mr. Goldasich nor anyone from his office nor anyone on Plaintiffs' behalf, including Plaintiffs' other two lawyers who have appeared in this action, returned Mr. Collins's call or otherwise telephoned Allied, sent any correspondence to Allied, or communicated with Allied in any way at any time whatsoever during the nearly four-month period in which Allied was attempting to collect the debt from Ms. Gustin—October 25, 2010, to February 11, 2011—or

_____

[8] Allied's account notes reflect that Mr. Collins, in that call, left a voicemail for Ms. Gustin ("VM [voicemail] LM [left message]").  *See* [Doc. 19], Exhibit K, p. 14.

otherwise apprised Allied that Ms. Gustin was represented by counsel with respect to the subject debt. Instead of returning Mr. Collins's call, Mr. Goldasich's response was to send a letter on February 21, 2011, to *FAMS* reminding *it* of his representation of Ms. Gustin. *See* Exhibit N to [Doc. 19].

In light of Mr. Collins's inability to determine whether the lawyer whom he had telephoned represented Ms. Gustin in connection with the subject debt, Allied permissibly continued its collection efforts. Plaintiffs would have the Court impose an absolute legal "duty" on Allied to ascertain Mr. Goldasich's contact information. *See* Response, p. 17. The FDCPA, however, requires that Mr. Goldasich's contact information be "readily"—as in "easily" or "quickly"—"ascertainable"—as in "to learn or find out definitely" or "to determine with certainty or assurance." Consequently, Allied is entitled to summary judgment as to Plaintiffs' claim that Allied violated § 1692c(a)(2) of the FDCPA. *See Goodman v. Southern Credit Recovery, Inc.*, 1999 WL 14004, *5 (E.D. La. 1999) (The language of section 1692c(a)(2) prohibits only direct communications with the debtor where a debt collector . . . knows that the debtor is represented by counsel 'with respect to such debt.' The applicable law does not require a debt collector to assume that an attorney representing a consumer with respect to one or more specific debts represents that consumer with respect to all obligations which are owed by the consumer. The authorities cited by SCR fully support granting summary judgment dismissing plaintiff's [§] 1692c(a)(2) claim with prejudice.").

Respectfully submitted,

/s/ L. Jackson Young, Jr.
Neal D. Moore III
L. Jackson Young, Jr. (ASB-7946-G65L)
*Attorneys for Defendant*
*Allied Interstate LLC*

**OF COUNSEL:**
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
(205) 879-8722 – telephone
(205) 879-8831 – telecopier
Email:  ljy@ffdlaw.com

## CERTIFICATE OF SERVICE

This is to certify that on this the 4th day of April, 2013, a copy of the forgoing document has been served upon counsel for all parties to this proceeding by the following method:

_____mailing the same by first-class United States mail, properly addressed and postage pre-paid

_____hand delivery

_____via electronic mail

_____X_____electronically via CM/ECF

John C. Hubbard, Esq. (johnchubbard@gmail.com)
Michael W. Lindsey, Esq.
Jauregui & Lindsey, LLC
2110 Devereux Circle
Birmingham, Alabama 35253

{W0351149.1 }                              11

Dennis E. Goldasich, Jr., Esq. (dennis@golaw.net)
Goldasich & Associates, LLC
2100 Third Avenue North
Suite 700
Birmingham, Alabama 35203

/s/ L. Jackson Young, Jr.
Of Counsel