UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES GUSTIN and ASHLEY GUSTIN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: 2:11-cv-03795-JEO |
| | ) |
| ALLIED INTERSTATE LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the court on Defendant Allied Interstate LLC's ("Allied") Motion for Summary Judgment. (Doc. 18).[1] The motion has been fully briefed and is properly under submission before the court. (Docs. 19, 20, and 21). For the reasons stated more fully below, summary judgment is due to be granted in part and denied in part.

**I.      FACTS[2]**

This case arises out of Allied's efforts to collect a student loan debt owed by Plaintiff Ashley Gustin to the U.S. Department of Education ("DOE").[3] Ms. Gustin took out the loan in 2001 and used the proceeds to attend the University of Alabama, from which she graduated in 2005. (A. Gustin Depo., Doc. 19-2 at 14, 45-46).

In April 2010, Ms. Gustin received a collection letter regarding her student loan debt from Financial Asset Management Systems ("FAMS"). (*Id.* at 82). FAMS is a debt collection

---

[1] References herein to "Doc. __" are to the document number assigned by the Clerk of Court in the court file.

[2] These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[3] Plaintiffs have conceded Ashley Gustin's liability on the student loan for purposes of this litigation. (Doc. 20 at 3).

1

agency used by the DOE to collect defaulted student loans. (Hornbuckle Depo., Doc. 19-3 at 40). At that time, Ms. Gustin was unaware of the debt and thought her father had paid for all of her education. (A. Gustin Depo., Doc. 19-2 at 29, 47).

Ms. Gustin's husband, Plaintiff James Gustin, contacted attorney Dennis Goldasich concerning the student loan debt. (*Id.* 19-2 at 99-100). By letter dated June 10, 2010, Mr. Goldasich advised FAMS that he represented Ms. Gustin regarding FAMS's attempt to collect the debt and that Ms. Gustin disputed it.[4] (Doc. 19-5). Mr. Goldasich requested FAMS to provide him with copies of all documents in its possession relating to the student loan. (*Id.*). Before releasing any documentation to Mr. Goldasich, FAMS requested written authorization from Ms. Gustin to release the documents to him. (Doc. 19-6). Mr. Goldasich's office provided Ms. Gustin's signed authorization to FAMS in August. (*Id.*). FAMS then sent six pages of documentation to Mr. Goldasich. (Doc. 19-7). The record does not reflect any further communications from FAMS to Mr. Goldasich or Ms. Gustin.

On October 25, 2010, the DOE reassigned Ms. Gustin's account to Allied for further collection efforts. (Hornbuckle Depo., Doc. 19-3 at 115-16). Allied is another debt collection agency used by the DOE to collect student loan debts. (*Id.* at 40). Upon receiving the account, Allied sent Ms. Gustin a letter advising her that her loan had been placed with Allied for collection. (*Id.* at 161; Doc. 19-9).

At the time the DOE assigned Ms. Gustin's account to Allied, Allied was given access to the account notes in the DOE computer system, which included the following two notes entered by FAMS:

> 06/11/2010 12:00 …
> RCVD [RECEIVED] FAXD FRM BWR [BORROWER] ATTY DENNIS
> GOLDASICH JR REQ VERI [VERIFICATION] & VALIDATION OF DEBT

---

[4] In his letter, Mr. Goldasich referred to Ms. Gustin as "Ashley Irwin," which was her maiden name.

2

>  08/30/2010 12:00 …
>  RCVD LTR FRM BWR [BORROWER] ATTY & BWR GVG [GIVING] AUTH TO ATTY DENNIS GOLDASICH TO ACCESS LN ACCT INFO …

(*Id.* at 79-80, 140; Doc. 19-10). An Allied collector reviewed the DOE account notes on October 26, 2010, and entered the following notation in the account summary on Allied's computer system: "LKD [LOOKED] ON DOE…AND TH BRRW [BORROWER] IS WRKNG [WORKING] W/ATTY GOLDASICH JR….DISPUTING THE DEBT." (Doc. 19-11 at 7; Hornbuckle Depo., Doc. 19-3 at 120). Allied did not have access to any documents in the DOE system or to the letters between Mr. Goldasich and FAMS. (Hornbuckle Depo., Doc. 19-3 at 42-44, 133).

On November 6, 2010, an Allied collector, Yvetta Schwartz, placed a telephone call in an effort to locate Ms. Gustin. (Schwartz Depo., Doc. 19-12 at 47-48). Ms. Gustin's aunt answered the call. (*Id.*) She asked for Ms. Schwartz's name and telephone and said she would give a message to Ms. Gustin. (*Id.*) Two days later, Ms. Gustin called Allied and spoke with an Allied collector. (A. Gustin Depo., Doc. 19-2 at 137-38). According to Allied's account notes, Ms. Gustin disputed that the debt was in default and said she would have her attorney call Allied. (Doc. 19-11 at 8-9). Ms. Gustin does not dispute making the call, but testified that the collector's note sounded "one-sided and inaccurate" and that she believes she would have told the collector, "I'm represented by an attorney…you can contact him." (A. Gustin Depo., Doc. 19-2 at 137-38).

According to Allied's account notes, Allied made repeated calls to Ms. Gustin's home and cell phone numbers throughout the remainder of November 2010 and into early January 2011, but spoke with Ms. Gustin on only two occasions. (Doc. 19-11 at 9-12). The notes reflect that an Allied collector called and spoke with Ms. Gustin on November 22, 2010, and that Ms.

3

Gustin told the collector she would have her husband call Allied about the debt.[5] (*Id.* at 9). On January 3, 2011, an Allied collector spoke briefly with Ms. Gustin and ended the call when Ms. Gustin said she was waiting on a call from her doctor. (*Id.* at 13).

Allied's account notes reflect that one of its collectors, Franklin Collins, made 31 calls to Ms. Gustin's cell phone number between January 12 and February 11, 2011. (Collins Depo., Doc. 19-15 at 17). Although Mr. Collins had no independent recollection of Ms. Gustin's account, he testified that he never spoke with Ms. Gustin or her husband because there is no such conversation documented in the account notes. (*Id.* at 18). Ms. Gustin, on the other hand, testified that she had a "handful" of conversations with Mr. Collins and that he was "aggressive and harsh" and "threatening" on the calls.[6] (A. Gustin Depo., Doc. 19-2 at 104-05, 116-17). She further testified that she told Mr. Collins that she was working with an attorney and that he needed to contact the attorney. (*Id.* at 118-19). According to Ms. Gustin, Mr. Collins asked if her attorney was Dennis Goldasich, and she replied in the affirmative. (*Id.*).

James Gustin echoed his wife's testimony. He said he spoke with Mr. Collins four or five times, and specifically recalled one conversation during which he told Mr. Collins to talk to their attorney and Mr. Collins identified Mr. Goldasich by name. (J. Gustin Depo., Doc. 19-17 at 18-19, 25-26).

Although Mr. Collins denied ever speaking with Ms. Gustin, he admitted that he knew (from his review of Allied's account notes and the DOE account notes) that she claimed to have an attorney and that his name was Dennis Goldasich. (Collins Depo., Doc. 19-15 at 65-66, 71-72). In fact, on January 14, 2011, Mr. Collins "googled" Mr. Goldasich's name and then called

---

[5] At her deposition, Ms. Gustin testified that she did not know whether the account note contained an accurate summary of the call. (A. Gustin Depo., Doc. 19-3 at 140-41).

[6] It is not clear from the record when these phone calls occurred.

4

his office. (*Id.* at 29-31). Mr. Goldasich was not in the office at that time, but Mr. Collins spoke with a paralegal, told her he was calling in reference to Ms. Gustin, and left his contact information. (*Id.* at 75-76). Mr. Collins then entered a notation in Allied's account summary that he had telephoned the "borrower's attorney."[7] (Collins Depo., Doc. 19-15 at 106-07; Doc. 19-11 at 15). Two hours later Mr. Collins resumed his efforts to contact Ms. Gustin directly. (*Id.* at 78-79). It is undisputed that Mr. Goldasich never returned Mr. Collins's call. Instead, Mr. Goldasich sent a letter to FAMS, under the mistaken belief that FAMS was still handling Ms. Gustin's debt. (Doc. 19-16 at ¶4).

According to Allied's account notes, Allied's last conversation with Ms. Gustin occurred on February 11, 2011, when an Allied representative called Ms. Gustin and discussed a payment plan to pay off the debt. (Doc. 19-11 at 17-18).

Dennis Goldasich did not have any communication with Allied prior to the filing of this lawsuit. (Doc. 19-16 at ¶ 16).

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its

---

[7] Mr. Collins testified that his notation meant "possible borrower attorney," but he admitted that he did not include the word "possible" in his notation. (Collins Depo., Doc. 19-15 at 106-07).

motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–24.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 259).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50; *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254).  Nevertheless, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.  The nonmovant need not be given the benefit of every inference, but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).  "If reasonable minds could differ on the

inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F. 3d at 646 (citations omitted).

## III.   ANALYSIS

In response to Allied's Motion for Summary judgment, Plaintiffs dismissed several of their claims. Consequently, only the following claims remain before the court: Plaintiffs' claim that Allied violated § 1692c(a)(2) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Plaintiffs' claims that Allied committed the state law torts of wantonness, negligent training and supervision, and wanton training and supervision; and Plaintiff Ashley Gustin's claim that Allied violated § 1692b(6) of the FDCPA. The court will first address Allied's motion as it pertains to Plaintiff Ashley Gustin, and will then address the motion as it pertains to Plaintiff James Gustin.

### A.   Ashley Gustin's Claims

#### 1.   Violation of § 1692c(a)(2) of the FDCPA

The FDCPA provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt…if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector…."[8] 15 U.S.C. § 1692c(a)(2).  Here, Ashley Gustin alleges that Allied violated § 1692c(a)(2) by contacting her in connection with its efforts to collect her student loan debt despite knowing that she was represented by attorney Dennis Goldasich.

---

[8] It is undisputed that Allied is a "debt collector" and that Ashley Gustin is a "consumer" for purposes of the FDCPA.

7

Allied argues that Ms. Gustin's § 1692c(a)(2) claim fails because she cannot adduce substantial evidence that (1) Allied had actual knowledge that Ms. Gustin was represented by Mr. Goldasich with respect to the specific debt it was attempting to collect; (2) Allied had actual knowledge of or could readily ascertain Mr. Goldasich's name and address; and (3) Mr. Goldasich ever responded to Allied's (Franklin Collins's) call to his office. After carefully reviewing the evidence in the record, the court finds that there is sufficient evidence to defeat Allied's Motion for Summary Judgment on this claim.

In order to prevail on her § 1692c(a)(2) claim, Ms. Gustin must prove that Allied had "actual knowledge" that she was represented by an attorney with respect to the subject debt. *See, e.g., Eslava v. AllianceOne Receivables Mgmt., Inc.*, 2012 WL 4336012, *2 (S.D. Ala. 2012) ("Abundant precedent, as well as the plain statutory language, confirms that this [§ 1692c(a)(2)] claim requires [the plaintiff] to prove that [the defendant] had actual knowledge that she was represented by counsel."); *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77, 80 (N.D.N.Y. 2001) ("Courts have construed the knowledge component of 1692c(a)(2) to require that a debt collector possess actual knowledge that the debtor was represented by an attorney."). Allied argues that it did not have such actual knowledge. Allied admits that it was aware of the references to "borrower's attorney Dennis Goldasich" in the DOE account notes before it contacted Ms. Gustin, but argues that it did not have access to Mr. Goldasich's letters to FAMS and did not know whether Mr. Goldasich represented Ms. Gustin with respect to the debt Allied had been assigned for collection or whether he still represented her at all.

However, the record reflects that on October 26, 2010—the day after Allied was assigned Ms. Gustin's student loan debt for collection—an Allied collector entered a notation in Allied's system that the collector had "looked on" the account notes in the DOE system and that "the

8

borrower" was "working with attorney Goldasich Jr." and disputing "the debt." (Doc. 19-11 at 7). Heather Hornbuckle, Allied's corporate representative, admitted that the notation indicated that Ms. Gustin had an attorney relating to "this debt."[9] This evidence, standing alone, is sufficient to create a genuine dispute as to whether Allied had actual knowledge from the outset that Ms. Gustin was represented by Mr. Goldasich with respect to her student loan debt. In addition to this evidence, the record also reflects that during her first telephone conference with an Allied collector on November 8, 2010, Ms. Gustin mentioned that she had an attorney.[10] And both Plaintiffs testified that they told Allied collector Franklin Collins to talk with their attorney and that Mr. Collins identified Mr. Goldasich by name when they did so. (A. Gustin Depo., Doc. 19-2 at 118-19; J. Gustin Depo., Doc. 19-17 at 25-26). Based on this evidence, a reasonable jury could conclude that Allied had actual knowledge that Ms. Goldasich represented Ms. Gustin with respect to the debt Allied was trying to collect.

Allied also argues that it did not have any contact information for Mr. Goldasich and that Ms. Gustin never provided any. Section § 1692c(a)(2), however, requires only that the debt collector be able to "readily ascertain" the attorney's name and address. The statute does not require the consumer to provide the attorney's address (or other contact information) to the debt collector, and Allied has cited no cases that have so held. Given the undisputed evidence that Allied had knowledge of Mr. Goldasich's full name from the start of its collection efforts, a reasonable jury could certainly find that Allied could have readily ascertained his address. *See Morrow v. Weinerman & Associates, LLC*, 2011 WL 4472651, *4 (D. Minn. 2011) (noting that

---

[9] Ms. Hornbuckle contended, however, that the notation was not accurate. (Hornbuckle Depo., Doc. 19-3 at 122-23).

[10] Allied's account notes reflect that Ms. Gustin told the collector that she would have her attorney call Allied; Ms. Gustin believes she would have told the collector to contact her attorney. (Doc. 19-11 at 8-9; Doc. 19-2 at 137-38). Either way, it is undisputed that Ms. Gustin informed the collector that she had an attorney.

where a debt collector knew the name of the consumer's attorney, the attorney's "address or other contact information could have been readily ascertained through a simple search").

Finally, Allied argues that its communications with Ms. Gustin did not violate § 1692c(a)(2) because Mr. Goldasich never responded when Franklin Collins left a message at his office on January 14, 2011. The court would first note that Mr. Collins's attempt to contact Mr. Goldasich on January 14, 2011, would not excuse Allied's communications with Ms. Gustin prior to that date, were the jury to find that Allied had actual knowledge from the outset that Mr. Goldasich represented Ms. Gustin with respect to her student loan debt and that his address was readily ascertainable.[11] Moreover, Allied's own records reflect that Mr. Collins resumed his efforts to contact Ms. Gustin just two hours after calling Mr. Goldasich's office and that Allied spoke with Ms. Gustin about setting up a debt payment plan on February 11, 2011, less than one month after Mr. Collins's call to Mr. Goldasich's office. (Collins Depo., Doc. 19-15 at 78-79; Doc. 19-11 at 17-18). In addition, both Plaintiffs testified that they had several telephone conversations with Mr. Collins; whether one or more of those conversations occurred after January 14, 2011, is not clear from the record. All of this evidence is sufficient to create a jury question as to whether Allied waited a "reasonable period of time" after January 14, 2011, before communicating with Ms. Gustin, as the FDCPA requires.

For the reasons stated above, Allied's Motion for Summary Judgment on Plaintiff Ashley Gustin's claim for violation of § 1692c(a)(2) is due to be denied.

### 2. Violation of § 1692b(6) of the FDCPA

Ashley Gustin alleges that Allied violated § 1692b(6) of the FDCPA when it spoke with her aunt after learning that Ms. Gustin was represented by an attorney with respect to her student

---

[11] Indeed, the fact that Mr. Collins "googled" Mr. Goldasich's name to obtain his contact information undermines Allied's contention that his address was not readily ascertainable.

loan debt.[12] Section 1692b(6) provides that a debt collector "communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall…after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney…." 15 U.S.C. § 1692b(6). "Location information" is defined to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

It is undisputed that Allied had only one call with Ms. Gustin's aunt. On November 6, 2010, Allied collector Yvetta Schwartz spoke with Ms. Gustin's aunt when she was trying to obtain location information on Ms. Gustin. (Schwartz Depo., Doc. 19-12 at 47-48). Ms. Schwartz left her name and telephone number with Ms. Gustin's aunt, who said she would give a message to Ms. Gustin. (*Id.*) There is no evidence that Ms. Schwartz mentioned or discussed Ms. Gustin's debt during the call.

Ms. Gustin argues that Allied's call with her aunt violated § 1692b(6) because Allied was seeking location information on Ms. Gustin at a time when it knew she was represented by an attorney with respect to the subject debt.[13] Although it is a close call, the court finds that there is sufficient evidence in the record to submit this claim to the jury. "[W]hen a debt collector knows that a consumer has retained counsel with regard to the subject debt, he may not generally contact anyone other than the attorney to determine the consumer's whereabouts." *Guerrero v.*

---

[12] In its Memorandum of Law in support of its Motion for Summary Judgment, Allied addressed § 1692c(b) of the FDCPA, which provides that "without the prior consent of the consumer given directly to the debt collector,…a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer [or] his attorney…." 15 U.S.C. § 1692c(b). Allied argued that it did not violate §1692c(b) when it spoke with Ms. Gustin's aunt. Plaintiffs did not address § 1692c(b) in their response to Allied's motion. Accordingly, to the extent (if any) that Ms. Gustin has been pursuing a claim for violation of § 1692c(b), that claim has been abandoned.
.
[13] In Allied's Reply to Plaintiffs' Response to the Motion for Summary Judgment, Allied did not address Ms. Gustin's claim that it violated § 1692b(6).

11

*RJM Acquisitions LLC*, 499 F.3d 926, 935 n.2 (9th Cir. 2007) (citing 15 U.S.C. § 1692b(6)). Here, a reasonable jury could find that on November 6, 2010, Allied knew Ms. Gustin was represented by Mr. Goldasich with respect to her student loan debt and could have readily ascertained his address, based on the references to Mr. Goldasich in the DOE account notes and the October 26, 2010, notation in Allied's system that Ms. Gustin was "working with attorney Goldasich Jr." and disputing "the debt." Were the jury to so find, it could further find that Allied violated § 1692b(6) when it communicated with Ms. Gustin's aunt for the purpose of acquiring location information on Ms. Gustin. Accordingly, summary judgment is due to be denied on this claim.

### 3. Wantonness

In addition to her FDCPA claims, Ashley Gustin alleges that Allied committed the state law tort of wantonness. Wantonness involves "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998); *see* ALA. CODE § 6-11-20(b)(3) (defining wantonness as "[c]onduct which is carried on with a conscious or reckless disregard of the rights or safety of others"). Under Alabama law, "if there is any evidence from which a jury can reasonably infer wantonness, the issue should be presented to the jury." *Sellers v. Sexton*, 576 So. 2d 172, 175 (Ala. 1991) (citing *McDougle v. Shadrix*, 534 So. 2d 228 (Ala. 1988)).

Ms. Gustin's wantonness claim is based on her contention that Allied knowingly violated her FDCPA rights by contacting her directly despite knowing that she was represented by an attorney. Allied argues that it is entitled to summary judgment on this claim because it made reasonable efforts to determine whether Mr. Goldasich represented Ms. Gustin in connection

with the subject debt and did not consciously or intentionally commit any wrongful act. For all of the reasons discussed above with respect to Ms. Gustin's claim under § 1692c(a)(2) of the FDCPA, the court finds that Ms. Gustin's wantonness claim should be presented to the jury and that summary judgment is due to be denied on that claim.[14] A jury could reasonably infer from the evidence that Allied engaged in wanton conduct and intentionally violated § 1692c(a)(2) by repeatedly contacting Ms. Gustin about her student loan debt even though it knew from its own account notes and from Plaintiffs themselves that Ms. Gustin had an attorney who was representing her in connection with the debt.

In *Lindsey v. NCO Financial Systems, Inc.*, 2002 WL 3999870 (N.D. Ala. 2012), a case cited by Plaintiffs, the plaintiff alleged that a debt collector was liable for wantonness based on its employee's improper collection practices. The district court denied the debt collector's motion for summary judgment on this claim, finding that the plaintiff had presented sufficient evidence of wantonness to overcome summary judgment. *Id.* at *7. In reaching its decision, the court noted that the employee had been warned about failing to meet her collection goal and that the company had a commission program under which the employee could earn additional money when her collections exceeded her goal. *Id.* at *6. The court held that a jury could reasonably infer from this evidence that the employee cut corners and consciously disregarded the company's collection policies, noting that "scant evidence" is all that is needed for a wantonness claim. *Id.* at *6-7.

Here, similarly, Allied's collectors are paid an hourly rate along with a commission. (Hornbuckle Depo., Doc. 19-3 at 210). To receive a commission, the collectors must meet their

---

[14] In Allied's Reply to Plaintiffs' Response to its Motion for Summary Judgment, Allied did not directly address any of the arguments offered by Plaintiffs in support of their wantonness claim. Instead, Allied noted that "Plaintiffs' entire Response appears to rise and fall on the success of their § 1692c(a)(2) claim" and addressed only that claim. (Doc. 21 at 5, n.1).

13

collection goals. (*Id.* at 210-11). Collector Yvetta Schwartz testified that if she did not make good progress on an account, it would be moved to another collector and she would not receive a bonus on that account. (Schwartz Depo., Doc. 19-12 at 19-21). She further testified that if she was provided with the name and telephone number of a consumer's attorney, she would hand over the account to her supervisor for handling. (*Id.* at 30-31). As the district court held in *Lindsey*, a jury could reasonably infer wanton conduct from this evidence. A jury could reasonably infer that Ms. Schwartz and the other collectors who contacted Ms. Gustin "cut corners" and consciously disregarded the FDCPA's prohibition against contacting consumers represented by an attorney, in an effort to meet their collection goals and receive a commission. Accordingly, summary judgment on Ms. Gustin's wantonness claim is due to be denied.

### 4. Negligent Training and Supervision

Plaintiffs' complaint contains separate claims for negligent and wanton training and supervision. (Doc. 1 at ¶¶ 44-55). Allied has moved for summary judgment on both claims, although it addresses both claims together in its Memorandum of Law. (Doc. 19 at 42-44). The court will address each claim separately.

The court finds that Allied is entitled to a summary judgment on Ms. Gustin's negligent training and supervision claim, but for a reason that the parties have not addressed. Ms. Gustin's negligent training and supervision claim fails as a matter of law because she has not alleged or shown any facts to demonstrate actionable damages. The only damages she is seeking for Allied's alleged negligence are damages for mental anguish. (Doc. 1 at ¶ 49). Under Alabama law, however, "[d]amages for mental anguish are not recoverable for negligence except when the plaintiff has suffered physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by the conduct." *Brown v. First Fed. Bank*, 95 So. 3d 803, 818

(Ala. Civ. App. 2012). Here, Ms. Gustin has not alleged, nor has she offered any evidence, that she suffered any physical injury or was placed in an immediate risk of physical injury as a result of Allied's alleged negligence. Because mental anguish damages are not recoverable for negligence except when coupled with a physical injury or a risk of physical injury, Ms. Gustin's claim for negligent hiring and supervision is due to be denied.

### 5. Wanton Training and Supervision

Ms. Gustin's final pending claim is for wanton training and supervision. A plaintiff alleging wanton defects in training and supervision must first establish that an employee committed a "common-law, Alabama tort." *Shuler v. Ingram & Associates*, 441 F. App'x 712, 720 (11th Cir. 2011) (quoting *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002)). The plaintiff must further establish that the employer "actually knew of" the employee's alleged incompetence or "reasonably should have known of it." *Lindsey*, 2012 WL 3999870 at *7 (quoting *Speigner v. Shoal Creek Drummond Mine*, 2010 WL 4342242, *4 (11th Cir. 2010)). As with any wantonness claim, the plaintiff must also establish that the employer acted with a "reckless or conscious disregard" of her rights. *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1004 (Ala. 1993).

Allied argues that Ms. Gustin's wanton training and supervision claim fails as a matter of law because she cannot establish any of her underlying tort claims.[15] As discussed above, however, Ms. Gustin's wantonness claim is sufficient to survive summary judgment. Therefore, Ms. Gustin's wanton training and supervision claim will also survive if there is evidence from which a jury could find that Allied knew or should have known of its employees' wanton conduct towards Ms. Gustin and recklessly or consciously disregarded Ms. Gustin's rights.

---

[15] When Allied filed its Motion for Summary Judgment, Plaintiffs had pending tort claims for negligence, wantonness, invasion of privacy, and outrage. Plaintiffs have since dropped all of those claims except for wantonness.

Allied makes no argument that it was unaware of its collectors' efforts to contact Ms. Gustin directly to collect her student loan debt. Indeed, Allied collector Franklin Collins testified that everything he did in attempting to collect Ms. Gustin's debt was done with the direct approval of his supervisors. (Collins Depo., Doc. 19-15 at 101). Moreover, the collectors' collection activities are recorded in the account notes in Allied's computer system, and the notes reflect the collectors' calls to and conversations with Ms. Gustin after October 26, 2010, the date on which a collector noted that Ms. Gustin was working with Mr. Goldasich and disputing the debt. (*See* Doc. 19-11).

Despite Allied's knowledge that its collectors were continuing to contact Ms. Gustin directly to collect her debt, Allied did not discipline any of its collectors for their actions. (*See* Schwartz Depo., Doc. 19-12 at 60; Collins Depo., Doc. 19-15 at 102). To the contrary, Allied has embraced and ratified their conduct; Allied assistant vice president/trainer Kelly Snyder testified that a review of Allied's entire account summary would not have led her to the conclusion that Ms. Gustin was represented by an attorney or that she needed to probe as to whether Ms. Gustin had such representation. (Snyder Depo., Doc. 20-2 at 68).

Based on this evidence, a jury could reasonably infer that Allied consciously disregarded Ms. Gustin's rights under the FDCPA and consciously disregarded the evidence that its collectors were communicating with Ms. Gustin in violation of the FDCPA. Ms. Gustin has made a sufficient showing to sustain her wanton training and supervision claim, and summary judgment is due to be denied on this claim.[16]

---

[16] Unlike the negligent training and supervision claim, the wantonness claim does not require physical injury to permit a recovery for damages for mental anguish. *Brown*, 95 So. 3d at 818.

### B. James Gustin's Claims

#### 1. Violation of § 1692c(a)(2) of the FDCPA

Like his wife, Plaintiff James Gustin has asserted claims against Allied for violation of § 1692c(a)(2) of the FDCPA, wantonness, negligent training and supervision, and wanton training and supervision. In Allied's Memorandum of Law in support of its Motion for Summary Judgment, Allied argues that Mr. Gustin has no standing to bring any of his claims, "with the possible exception of Plaintiffs' § 1692c claims." (Doc. 19 at 45). In other words, Allied has conceded that Mr. Gustin may be entitled to bring a § 1692c(a)(2) claim.

For purposes of § 1692c of the FDCPA, the term "consumer" is defined to include the consumer's spouse. 15 U.S.C. § 1692c(d). As Ms. Gustin's spouse, Mr. Gustin has the same rights to pursue a claim for violation of § 1692c(a)(2) as his wife. *See Quinlan v. Citimortgage, Inc.*, 2011 WL 2516236, *3 (E.D. Cal. 2011) (holding that a consumer's spouse had standing to bring claims against a debt collector for violations of § 1692c). The court finds, however, that Mr. Gustin's § 1692c(a)(2) claim fails as a matter of law.

To prove an FDCPA claim, a plaintiff must prove that he has been "the object of collection activity arising from consumer debt…." *Hunt v. 21st Mortg. Corp.*, 2012 WL 3903783, *5 (N.D. Ala. 2012) (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000)). Mr. Gustin has offered no evidence that he was the object of Allied's collection activity, and it is undisputed that he had no obligation to pay his wife's student loan debt. *See Sylvester v. GE Capital Retail Bank*, 2012 WL 3522691, *2 (M.D. Fla. 2012) (dismissing a plaintiff's FDCPA claim where there were "no allegations that she was obligated to pay the subject debt"). Mr. Gustin admitted that he "voluntarily" became involved in the collection matter so that his wife would not be involved. (J. Gustin Depo., Doc. 19-17 at 21-22).

17

He further admitted that until he gave Allied his cell phone number, Allied never sought him out and never tried to talk with him about the debt. (*Id.* at 20-21). He was not even sure whether Allied ever called his cell phone number directly. (*Id.* at 20).

In light of the undisputed evidence that Mr. Gustin was not obligated on his wife's student loan and that he became involved in the collection dispute voluntarily and not as a result of any collection activity directed towards him, Allied is entitled to summary judgment on Mr. Gustin's claim for violation of § 1692c(a)(2).

### 2. Tort Claims

Allied is also entitled to summary judgment on Mr. Gustin's state law tort claims. Mr. Gustin's claim for negligent training and supervision fails for the same reason that his wife's claim fails: like his wife, he is seeking only mental anguish damages and has not alleged or shown that he suffered any physical injury or was placed in immediate risk of physical injury as a consequence of Allied's alleged negligence. *See Brown*, 95 So. 3d at 818.

Mr. Gustin's claims for wantonness and for wanton training and supervision fail because there is insufficient evidence in the record to establish that Allied acted with a "reckless or conscious disregard" of his rights. *See* Ala. Code § 6-11-20-(b)(3). Again, it is undisputed that Mr. Gustin was not obligated to pay his wife's debt, that Allied never attempted to collect the debt from him, and that Allied never sought to talk with him about his wife's debt until he voluntarily entered the collection dispute and voluntarily gave Allied his cell phone number. Based on this evidence, no reasonable jury could find that Allied recklessly or consciously disregarded Mr. Gustin's rights. From all that appears from the evidence, Allied never would have communicated with Mr. Gustin but for his voluntary decision to get involved in the dispute.

Therefore, Allied is entitled to summary judgment on Mr. Gustin's claims for wantonness and for wanton training and supervision.

## IV.     CONCLUSION

For the reasons stated above, Allied's Motion for Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to all claims brought by Plaintiff James Gustin. The motion is **DENIED** as to Plaintiff Ashley Gustin's claims for violation of 15 U.S.C. §§ 1692b(6) and 1692c(a)(2), wantonness, and wanton training and supervision, which remain for trial by jury.

**DONE,** this 13th day of May, 2014.

_____
**JOHN E. OTT**
CHIEF UNITED STATES MAGISTRATE JUDGE

20